Case 5:25-cv-00169   Document 38   Filed 12/31/25 in TXSD   Page 1 of 13

United States District Court
Southern District of Texas
**ENTERED**
January 02, 2026
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| TEVDORE KHATCHAPURIDZE | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 5:25-cv-169 |
| | § | |
| KRISTI NOEM *et al.* | § | |

## ORDER

Petitioner, a Georgian citizen currently in ICE custody, brings this 28 U.S.C. § 2441 Petition challenging his continued detention despite being granted withholding of removal (*see* Dkt. No. 15). Following an exhaustive review of the law and facts, the Court **GRANTS IN PART** the Petition.

### I.   BACKGROUND

Petitioner is a twenty-six-year-old Georgian citizen (Dkt. No. 15 at 4, ¶ 15). He escaped Georgia's pro-Russian government and entered the United States on December 12, 2024[1] (Dkt. No. 15 at 4, ¶ 15). He was immediately apprehended upon his arrival and remains in ICE's custody at the Webb County Detention Center in Laredo, Texas (Dkt. No. 15 at 2, ¶ 6; 4, ¶ 15).

Petitioner sought asylum, withholding of removal under 8 U.S.C. § 1231(b)(3), and deferral of removal under the Convention Against Torture ("CAT") (Dkt. Nos. 15 at 1; 15-1 at 1, 3). He underwent a credible fear screening, and an Immigration Judge ("IJ") found he had a credible fear of returning to Georgia (Dkt. No. 15-2 at 2). On June 25, 2025, the IJ ordered him removed to Georgia, but concurrently granted him withholding of

---

[1] According to an ICE officer, Petitioner entered the United States on December 10, 2024 (Dkt. No. 21-1 at 1, ¶ 4). This disputed fact is of no consequence, as Petitioner's reasonable detention period accrues the date his removal order became final. 8 U.S.C. § 1231(a)(1)(B)(i).

1

removal, finding it more likely than not that Petitioner's life or liberty would be threatened if he returned to Georgia (Dkt. No. 15-1 at 1, 3). He was denied asylum (Dkt. No. 15-1 at 1). The IJ declined to decide whether Petitioner qualified for CAT protection (Dkt. No. 15-1 at 3). That same day, both Petitioner and DHS waived their right to appeal the IJ's removal order (Dkt. No. 15-1 at 4).

On September 23, 2025, ICE completed a Post-Order Custody Review ("POCR") of Petitioner's custody status (*see* Dkt. No. 15-3). ICE elected to continue Petitioner's detention because Petitioner failed to meet his burden that, if released, he would not be a flight risk (Dkt. No. 15-3). It cited no relevant criminal, immigration, or probation history, history of escapes, failures to appear for judicial or other proceedings, or disciplinary problems while incarcerated (Dkt. No. 15-3 at 5). *See* 8 C.F.R. § 241.4(f) (factors to weigh an alien's release). Additionally, ICE holds Petitioner's valid, unexpired Georgian passport—effectively barring him from leaving the United States (Dkt. No. 21-1 at 2, ¶ 14). As of the date of this Order, Petitioner remains detained in ICE's custody (Dkt. Nos. 15 at 2, ¶ 6; 4, ¶ 15; 21-1 at 1, ¶ 3).

Initially, Petitioner filed this habeas action on October 7, 2025 (*see* Dkt. No. 1). He amended his writ on November 6, 2025 (*see* Dkt. No. 15). Respondents moved to dismiss the Petition on November 17, 2025, arguing the Court lacks subject matter jurisdiction (Dkt. No. 21), and Petitioner filed a timely reply (Dkt. No. 30).

## II.   LEGAL STANDARDS

### A.   28 U.S.C. § 2241

Under 28 U.S.C. § 2241(c)(3), a detainee may seek habeas relief if they are "in custody in violation of the Constitution or laws or treaties of the United States." "The

petitioner 'bears the burden of proving that he is being held contrary to law; and because the habeas proceeding is civil in nature, the petitioner must satisfy his burden of proof by a preponderance of the evidence.'" *Puertas-Mendoza v. Bondi*, No. SA-25-CA-00890-XR, 2025 WL 3142089, at *1 (W.D. Tex. Oct. 22, 2025) (Rodriguez, J.) (quoting *Villanueva v. Tate*, No. CV H-25-3364, 2025 WL 2774610, at *4 (S.D. Tex. Sept. 26, 2025)).

A court entertaining a habeas petition shall immediately "award the writ or issue an order directing the respondent to show cause why the writ should not be granted." § 2243. A court need not hold a hearing if the habeas petition "raises only questions of law, or questions regarding the legal implications of undisputed facts." *Tijerina v. Thornburgh*, 884 F.2d 861, 866 (5th Cir. 1989); *see also Gomez-Simeon v. Bondi*, No. SA-25-CV-01460-JKP, 2025 WL 3470872, at *1, *6 (W.D. Tex. Nov. 24, 2025) (Pulliam, J.) (granting habeas petition without a hearing); *Puertas-Mendoza*, 2025 WL 3142089, at *1, *5 (same).

### B. Ripeness Doctrine

The Constitution confers federal courts jurisdiction to adjudicate "cases" and "controversies." U.S. Const. art. III, § 2, cl. 1; *Shields v. Norton*, 289 F.3d 832, 834–35 (5th Cir. 2002). "A case or controversy must be ripe for decision, meaning that it must not be premature or speculative. That is, ripeness is a constitutional prerequisite to the exercise of jurisdiction." *Shields*, 289 F.3d at 835 (footnotes and citations omitted). "A court should dismiss a case for lack of 'ripeness' when the case is abstract or hypothetical." *Dahl v. Vill. of Surfside Beach*, No. 22-40075, 2022 WL 17729411, at *2 (5th Cir. Dec. 16, 2022) (quoting *New Orleans Pub. Serv. v. Council of New Orleans*, 833

F.2d 583, 586 (5th Cir. 1987)). In other words, if a case "rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all,'" then it is not ripe, and must be dismissed. *Texas v. United States*, 523 U.S. 296, 300 (1998); *Dahl*, 2022 WL 17729411, at *2.

## III.   DISCUSSION

Respondents predominantly rest their motion to dismiss on ripeness, alleging that Petitioner has not yet been detained for six months following his removal order (*see* Dkt. No. 21 at 6). Beyond that, Respondents contend Petitioner's detention is lawful because his removal is reasonably foreseeable, and ICE deemed him a flight risk (*see* Dkt. No. 21 at 7–8). Petitioner counters "[t]he six-month presumptively reasonable detention period is not a categorical bar to challenge" (Dkt. No. 30 at 4). Petitioner further takes issue with Respondents' conclusory characterization of him as a flight risk and third-country removal broadly (Dkt. Nos. 15 at 9–13; 30 at 5). The Court addresses these arguments in turn.

### A. Ripeness and Subject Matter Jurisdiction

1. Indefinite Detention and *Zadvydas v. Davis*, 533 U.S. 678 (2001)

Pursuant to the INA, the Government ordinarily secures the removal of an alien during the statutory ninety-day period following an order of removal. 8 U.S.C. § 1231(a)(1)(A). As relevant here, the removal period begins to run on "[t]he date the order of removal becomes administratively final." *Id.* § 1231(a)(1)(B)(i). Aliens are generally detained during the removal period. *Id.* at § 1231(a)(2)(A).

If the alien is not removed during this statutory ninety-day period, the Government may continue to detain them for "a period reasonably necessary to bring

about that alien's removal from the United States." *Zadvydas*, 533 U.S. at 689. Reasonableness should be measured "in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal." *Id.* at 699. To aid in this determination, the Supreme Court set a presumptively reasonable six-month period of post-removal detention. *Id.* at 701. However, the *Zadvydas* court instructs:

> [O]nce the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the reasonably foreseeable future conversely would have to shrink.

*Id.* (citation modified). It is axiomatic, however, that the Constitution forbids an alien's indefinite or permanent post-removal detention. *Id.* at 689.

    2. Presumptively Reasonable Period of Detention

Respondents tether Petitioner's case to the ripeness doctrine, advancing that the *Zadvydas* framework demands that Petitioner be detained for six months before filing a habeas petition (*see* Dkt. No. 21 at 4–7).[2] However, Petitioner's post-removal detention has now exceeded six months. The parties agree that Petitioner's removal order became final on the date it was issued, June 25, 2025, because all relevant parties waived appeal (Dkt. Nos. 15 at 1, ¶ 4; 15-1 at 4; 21 at 6). Therefore, the six-month period lapsed on December 25, 2025 (Dkt. No. 15-1 at 4).

Regardless, several courts have recently held that the six-month detention period may be challenged *before* its expiration. In *Villaneuva v. Tate*, No. CV H-25-3364, --- F.

---

[2] In so arguing, Respondents cite two district court opinions (one of which is outside the Fifth Circuit): *Joseph v. Barr*, No. 2:19-cv-570-*FtM-60NPM, 2020 WL 13547410, at * 1 (Feb. 21, 2020), and *Singh v. Secretary of Department of Homeland Security*, No. EP-14-CV-39-PRM, 2014 WL 4403176, at *3 (W.D. Tex. July 21, 2014). As discussed *infra*, the Court is not compelled by these cases, and instead, finds that more recent authority holds that the six-month period is rebuttable.

Supp. 3d ---, 2025 WL 2774610 (S.D. Tex. Sept. 26, 2025), a Southern District of Texas judge persuasively outlined that *Zadvydas* is premised on the notion that "continued detention is proper only when the noncitizen's removal is reasonably foreseeable." 2025 WL 2774610, at *9. Thus, irrespective of the six-month period, "whether a noncitizen's detention is constitutional hinges on whether his removal from the United States is reasonably likely in the foreseeable future, not on how long the noncitizen has been detained." *Id.* at *10.

Similarly, United States District Judge Jason Pulliam emphasized that "*Zadvydas* [made] clear that it adopted a *presumption*—not a *conclusive bar* to adjudication of the issue whether continued detention is authorized that lifts only after six months have elapsed." *Gomez-Simeon*, 2025 WL 3470872, at *4. This conclusion is grounded in *Zadvydas*'s reasoning; with the six-month span, the Supreme Court sought to *guide* district courts—not impose a bright-line rule. *See Zadvydas*, 533 U.S. at 700–01 ("In order to **limit** the occasions when courts will need to make them, we think it practically necessary to recognize some **presumptively** reasonable period of detention." (emphasis added)); *see also Trinh v. Homan*, 466 F. Supp. 3d 1077, 1093 (C.D. Cal. 2020) ("*Zadvydas* established a 'guide' for approaching detention challenges, not a categorical prohibition on claims challenging detention less than six months."). The Court agrees with the *Villanueva* and *Gomez-Simeon* courts that nothing in *Zadvydas* precludes Petitioner "from challenging the reasonableness of his detention" before he was detained for six months. *Gomez-Simeon*, 2025 WL 3470872, at *4 (collecting cases).[3]

---

[3] Though Respondents neglected to cite them, the Court recognizes that *Chance v. Napolitano*, 453 F. App'x 535 (5th Cir. 2011) and *Okpoju v. Ridge*, 115 F. App'x 302 (5th Cir. 2004) (unpublished table decision) seemingly apply *Zadvydas*'s six-month detention period as a categorical bar. However, neither case is precedential, nor do either meaningfully engage with *Zadvydas*'s rationales or

6

At bottom, Petitioner has now been detained for over six months, and the reasonableness of his detention made before that deadline could have been rebutted. *See Gomez-Simeon*, 2025 WL 3470872, at *3; *Puertas-Mendoza*, 2025 WL 3142089, at *2; *Villanueva*, 2025 WL 2774610, at *9. Petitioner's claims have never been contingent or speculative, such that they were unripe. The Court now turns to the Petition's merits.

**B. Merits of Habeas Petition**

1. Petitioner's Burden

Having found that Petitioner has been detained beyond the presumptively reasonable period, he need only demonstrate "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 699. Although the Fifth Circuit instructed that an alien's onus extends beyond "conclusory statements," there is no further binding guidance. *Andrade v. Gonzales*, 459 F.3d 538, 543–44 (5th Cir. 2006). At any rate, the Court finds that the Government's tendered evidence acts to satisfy Petitioner's burden.

First, third-country removals are exceedingly rare. In fiscal year 2017, "only 1.6% of aliens who were granted withholding of removal were actually removed to an alternative country." *Johnson v. Guzman Chavez*, 594 U.S. 523, 537 (2021) (citation omitted). Indeed, aliens with withholding of removal status "typically remain[ ] in the United States for the foreseeable future." *Id.* at 552 (Breyer, J., dissenting). This makes sense, as foreign countries have little incentive to accept aliens with no connections to their country. *See Puertas-Mendoza v. Bondi*, No. SA-25-CA-00890-XR, 2025 WL 3142089, at *3 (W.D. Tex. Oct. 22, 2025) (Rodriguez, J.) ("[F]oreign governments

---

language. *See Chance*, 453 F. App'x at 536; *Okpoju*, 115 F. App'x at 302; *see also* 5th Cir. R. 47.5.4 (unpublished opinions are non-precedential).

7

'routinely deny' requests to receive people who lack a connection to the would-be receiving country.").

Aside from the rarity of third-country removals, ICE attempted to remove Petitioner to no avail. By their own account, Respondents submitted their first I-241 requests to Panama, Costa Rica, and Mexico on September 12, 2025—over *two months* after Petitioner's removal order became final (*see* Dkt. Nos. 15-1 at 4; 21-1 at 2, ¶ 8). All three have already declined to accept Petitioner (Dkt. No. 21-1 at 2, ¶¶ 8, 12). Only *after* this habeas proceeding was filed did Respondents submit requests to Belize and Spain (Dkt. No. 21-1 at 2, ¶¶ 11, 13). Both of those countries also refused Petitioner (Dkt. No. 21-1 at 2, ¶¶ 11, 13). To the Court's knowledge, there are no outstanding requests. Regardless, even if there are, pending requests are "insufficient to show that [Petitioner's] removal is likely to occur in the reasonably foreseeable future." *Garcia-Aleman v. Thompson*, No. SA-25-CV-886-OLG (HJB), 2025 WL 3534806, at *5 (W.D. Tex. Nov. 24, 2025), *report and recommendation adopted*, No. SA-25-CV-00886-OLG, 2025 WL 3532179 (W.D. Tex. Dec. 9, 2025); *Trejo v. Warden of ERO El Paso E. Mont.*, No. EP-25-CV-401-KC, 2025 WL 2992187, at *5–6 (W.D. Tex. Oct. 24, 2025).

To be clear, the Court does not intend to paint the Government's efforts thus far as indolent or in bad faith. The Court recognizes that the Government has undertaken several good faith efforts to remove Petitioner to a third country. But *Zadvydas* explicitly rejected that good faith alone was the standard. 533 U.S. at 702 (holding that the good faith standard "would seem to require an alien seeking release to show the absence of *any* prospect of removal—no matter how unlikely or unforeseeable"). "Rather, the reasonableness of Petitioner's detention turns on whether and to what extent the

8

[G]overnment's efforts are likely to bear fruit." *Hassoun v. Sessions*, No. 18-CV-586-FPG, 2019 WL 78984, at *5 (W.D.N.Y. Jan. 2, 2019); *see also Ahrach v. Baltazar*, No. 25-CV-03195-PAB, 2025 WL 3227529, at *4 (D. Colo. Nov. 19, 2025) ("[T]he [G]overnment must actually make legitimate progress towards removal."). To date, none of the Government's requests yielded results, significantly undercutting any likelihood that his removal is foreseeable.

Finally, Petitioner is a Georgian citizen with no meaningful ties to any other country. *See Misirbekov v. Venegas (Misirbekov I)*, 793 F. Supp. 3d 892, 895 (S.D. Tex. 2025) (Olvera, J.) (finding a lack of connection to any country besides the alien's country of origin to be significant); *see also Trejo*, 2025 WL 2992187, at *5. Of course, ICE cannot legally return Petitioner to Georgia. § 1231(b)(3); *cf. Fahim v. Ashcroft*, 227 F. Supp. 2d 1359, 1366 (N.D. Ga. 2002) (barriers to repatriation are significant if a petitioner makes the required showing). However, nothing precludes a third country from extraditing him to Georgia—where he will likely be persecuted. *See Trejo*, 2025 WL 2992187, at *5; *see also Sagastizado v. Noem* (*Sagastizado II*), No. 5:25-CV-00104, 2025 WL 2957002, at *15 (S.D. Tex. Oct. 2, 2025) (Saldaña, J.) (discussing how once an alien is removed, non-refoulment may no longer be feasible). As recognized in this District, "[i]t is in the public interest to prevent 'aliens from being wrongfully removed, particularly to countries where they are likely to face substantial harm.'" *Misirbekov v. Venegas (Misirbekov III)*, No. 1:25-CV-00168, 2025 WL 2450991, at *2 (S.D. Tex. Aug. 15, 2025) (Olvera, J.) (quoting *Nken v. Holder*, 556 U.S. 418, 436 (2009)). This important consideration, taken with Petitioner's other evidence, persuades the Court that Petitioner carried his burden.

2. Whether the Government Rebutted Petitioner's Showing

Simply put, the Government's rebuttal efforts do not rise to the occasion. The

Government rests on the following unsubstantiated assertion: "ERO is working with ERO Headquarters Removals and International Operations ("HQ-RIO") to identify and secure removal to a third country. Therefore, there is a significant likelihood of removal in the reasonably foreseeable future as ERO is actively working to secure third country removal" (Dkt. No. 21-1 at 2–3, ¶ 15).

What is more, Respondents have not proffered any evidence—let alone even alleged—that a foreign country has *ever* accepted a Georgian national deported from the United States. *See Trejo*, 2025 WL 2992187, at *6; *see also Hassoun*, 2019 WL 78984, at *5. While the Court recognizes that Petitioner has been detained for just over six months, Respondents' inability to secure Petitioner's removal to this point casts serious doubt on their ability to do so at all. Thus, Petitioner's removal is not reasonably foreseeable, and his continued confinement amounts to an unconstitutional, indefinite detention. *See Zadvydas*, 533 U.S. at 696, 699 (finding that neither the INA nor the Constitution authorizes indefinite detention).

## C. Flight Risk Determination

At Petitioner's ninety-day POCR, ICE regarded Petitioner a significant flight risk and maintained his custody (Dkt. Nos. 15-3 at 5; 21-1 at 2, ¶ 9). Though the regulations designate factors to aid in the flight risk determination, "including history of escapes, failures to appear for immigration or other proceedings, absence without leave from any halfway house or sponsorship program, and other defaults," ICE cited none (Dkt. No. 15-3 at 5–7). *See* 8 C.F.R. § 241.4(f). The record does not reflect whether ICE conducted Petitioner's regulatorily mandated subsequent POCR.[4] Of note, ICE—not a neutral

---

[4] If an alien's removal is not accomplished within six months, a district director or the director of the detention and removal field office must conduct another review of a detainee's custody status.

10

arbiter—solely conducts *both* POCRs, and the process does not allow an opportunity for an appeal. 8 C.F.R. § 241.4(c)–(d).

Petitioner avers that ICE's conclusory flight risk characterization and lack of meaningful review violate his procedural due process outlined in *Mathews v. Elridge*, 424 U.S. 319 (1976) (Dkt. No. 15 at 7–9).[5] Notwithstanding his requests for release, he seeks individualized safeguards, "such as a custody review or individualized bond hearing" to prevent further constitutional deprivations (Dkt. No. 15 at 8). Respondents did not address this argument at all (*see* Dkt. No. 21).

At least one court has granted Petitioner the alternative relief he seeks. *See Trejo*, 2025 WL 2992187, at \*10. Here, however, the Court finds the better practice is to order Petitioner's release subject to 8 U.S.C. § 1231(a)(3) and 8 C.F.R. § 241.5. *See Gomez-Simeon*, 2025 WL 3470872, at \*5 (declining to reach procedural due process arguments when the petitioner was entitled to habeas relief); *Puertas-Mendoza*, 2025 WL 3142089, at \*4 (same). Indeed, the primary remedy for a *Zadvydas* claim is release, and his request for a bond hearing is superfluous. *See Gomez v. Mattos*, No. 2:25-CV-00975-GMN-BNW, 2025 WL 3101994, at \*7 (D. Nev. Nov. 6, 2025) ("The remedy for a *Zadvydas* claim is

---

8 C.F.R. § 241.4(k)(2)(ii).

[5] The Court acknowledges a split in authority whether *Zadvydas* and *Johnson v. Arteaga-Martinez*, 596 U.S. 573 (2022) foreclose procedural due process challenges to § 1231 detention. *Compare Trejo*, 2025 WL 2992187, at \*6–10 (determining a procedural due process claim could proceed notwithstanding *Zadvydas* and *Johnson*), *and Virani v. Huron*, No. SA-19-CV-00499-ESC, 2020 WL 1333172, at \*5–11 (W.D. Tex. Mar. 23, 2020) (finding a *Zadvydas* claim failed, but a procedural due process claim survived), *with Castaneda v. Perry*, 95 F.4th 750, 760–62 (4th Cir. 2024) (holding that *Zadvydas* forecloses an independent procedural due process claim), *and Linares v. Collins*, No. 1:25-CV-00584-RP, 2025 WL 2726549, at \*6 (W.D. Tex. Aug. 12, 2025) (absent a *Zadvydas* claim, petitioners lack the ability to bring a procedural due process challenge), *report and recommendation adopted*, No. 1:25-CV-584-RP, 2025 WL 2726067 (W.D. Tex. Sept. 24, 2025).

generally release of the habeas petitioner under conditions of supervision."). Accordingly, the Court does not decide this issue at this juncture.

### D. Third-Country Removal

Lastly, Petitioner contests the Administration's March Guidance, which designates DHS's third-country removal procedures (Dkt. No. 15 at 9–13).[6] **The Court will not resolve this issue, as it is separate and distinct from Petitioner's prolonged detention**.

## IV.    CONCLUSION

For the foregoing reasons, Petitioner's First Amended Habeas Petition (*see* Dkt. No. 15) is **GRANTED IN PART**. Respondents' Motion to Dismiss First Amended Petition for Writ of Habeas Corpus (Dkt. No. 21) is **DENIED**.

Respondents are **ORDERED** to **RELEASE** Petitioner Tevdore Khatchapuridze from custody, **under appropriate conditions of release**, to a public place **no later than 5:00 p.m. on January 5, 2026**. *See* 8 U.S.C. § 1231(a)(3) and 8 C.F.R. § 241.5.

Respondents are **ORDERED** to **NOTIFY** Petitioner's counsel of the exact location and exact time of his release as soon as practicable and **no less than two hours before his release**.

The parties are **ORDERED** to file a Joint Status Report **no later than 5:00 p.m. on January 6, 2026**, confirming that Petitioner has been released and advising the

---

[6] According to the Guidance, "[p]rior to the alien's removal to a country that had not previously been designated as the country of removal, DHS must determine whether that country has provided diplomatic assurances that aliens removed from the United States will not be persecuted or tortured." OFF. OF THE SEC'Y, U.S. DEP'T OF HOMELAND SEC., GUIDANCE REGARDING THIRD COUNTRY REMOVALS (Mar. 30, 2025). If the United States receives credible assurances, then the alien can be removed without further process. *Id.* If not, the Guidance imposes additional requirements, including notice and a fear screening. *Id.*

Court of his conditions of release.

The Court's prior **ORDER** that Respondents **NOTIFY** Petitioner's counsel and the Court of any anticipated or any planned removal of Petitioner from the United States, at least five (5) days before any such transfer or removal **REMAINS IN PLACE**.

It is so **ORDERED**.

**SIGNED** December 31, 2025.

                                              Marina Garcia Marmolejo
                                              United States District Judge