United States District Court
Southern District of Texas

**ENTERED**

February 24, 2026
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| TEVDORE KHATCHAPURIDZE, | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil No. 5:25-cv-00169 |
| | § | |
| KRISTI NOEM, | § | |
| PAMELA BONDI, | § | |
| PATRICK J. LECHLEITER, | § | |
| MIGUEL VERGARA, | § | |
| TODD LYONS, | § | |
| and MARIO GARCIA, | § | |
| *Defendants.* | § | |

## REPORT & RECOMMENDATION

The District Judge referred the matter of Ms. Lowenfeld's noncompliance with court orders to the undersigned to conduct a show cause hearing and issue a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1). Dkt. No. 24. Accordingly, the undersigned **RECOMMENDS** that the District Judge find that Ms. Lowenfeld has met her burden to show cause for failing to abide by the Court's orders, Dkt. Nos. 4, 7. Because the undersigned finds that Ms. Lowenfeld did not act in bad faith, the undersigned **RECOMMENDS** that no sanction be imposed.

### I. Background

This case was filed on October 7, 2025, ostensibly by Ms. Julia Lowenfeld as counsel for Petitioner. Dkt. Nos. 1–2. On October 14, 2025, the District Judge ordered Ms. Lowenfeld to either file a motion to appear pro hac vice for this case in the Southern District of Texas or advise the Court if she did not represent Petitioner. Dkt. No. 4. Ms. Lowenfeld did not file an advisory or motion for pro hac vice admission by the Court's deadline, but Petitioner re-filed his Petition

1

pro se.  Dkt. No. 6.  The Court subsequently appointed Petitioner new counsel, Dkt. No. 8, and Ms. Lowenfeld was ordered to show cause as to why she should not be sanctioned for failure to comply with court orders.  Dkt. No. 7.  The Court gave Ms. Lowenfeld a new deadline of November 7, 2025, to do so.  *Id.*  On November 18, 2025, when Ms. Lowenfeld once again had not filed a timely advisory to the Court, the District Judge referred the matter of Ms. Lowenfeld to the undersigned pursuant to 28 U.S.C. § 636(b)(1) for a show-cause hearing and report and recommendation regarding whether Ms. Lowenfeld should be sanctioned, pursuant to the court's inherent authority, for her failure to comply with court orders in this case.  Dkt. No. 24.

Accordingly, the undersigned set a show-cause hearing for December 5, 2025, by Zoom. Dkt. No. 26.  Prior to the hearing, however, Ms. Lowenfeld mailed a personal declaration to the Court explaining the unusual circumstances surrounding her failure to comply with the Court's orders in this case.  Dkt. No. 32.  Namely, Ms. Lowenfeld attested that her former paralegal had filed this case without her knowledge when Ms. Lowenfeld was out of office; that this former paralegal, Ms. Khatuna Jones, had forged Ms. Lowenfeld's signature on the Petition hoping to make it appear more meritorious; that Ms. Jones's resulting embarrassment led her to intercept the Court's orders as they were sent to Ms. Lowenfeld's office; and that upon Ms. Lowenfeld's discovery of Ms. Jones's actions in this case, she terminated Ms. Jones and took remedial measures to ensure that there will not be further breaches like this at her law firm moving forward.  *Id.* Because Ms. Lowenfeld's declaration alerted the Court to issues of identity and alleged fraudulent behavior in this matter, the undersigned rescheduled the show cause hearing to take place in person on January 15, 2026.  Dkt. No. 33.  Prior to the hearing, Ms. Lowenfeld was admitted pro hac vice to appear in the Southern District of Texas.  Dkt. No. 44.

2

At the show cause hearing, Ms. Lowenfeld reaffirmed the facts stated in her declaration. Ms. Lowenfeld is licensed to practice law in the State of New York and is admitted to practice in the United States District Court for the Southern and Eastern Districts of New York and the Second Circuit Court of Appeals. Dkt. No. 32. While she was required to appear in the Southern District of Texas for the show cause hearing in this case, Ms. Lowenfeld has never sought admission to practice in this district of her own accord. *Id.* To verify her identification, Ms. Lowenfeld presented the Court with her passport, her New York identification card, and her New York bar card, of which the Court took notice and found that Ms. Lowenfeld's identity was confirmed. Hr'g at 2:14–15; Dkt. No. 42-1. Ms. Lowenfeld runs her own practice in New York, focusing primarily on immigration and family law cases. Hr'g at 2:37–38. At the time this case was filed, her firm employed four paralegals, all supervised by Ms. Lowenfeld. Hr'g at 2:23. Each of the four paralegals is fluent in a foreign language, which helps the firm to effectively advise and represent non-English-speaking clients in their immigration proceedings. Hr'g at 2:23, 2:36–37.

According to the evidence presented, this ordeal began when one of these four paralegals, Ms. Khatuna Jones, filed the instant case on behalf of Petitioner, who is believed to be a relative of Ms. Jones's sister's family. Hr'g at 2:11, 2:24; *see also* Aff. Khatuna Jones. Ms. Jones urgently desired to assist Petitioner, who like Ms. Jones, is from the Republic of Georgia. Dkt. No. 32 at 2; Hr'g at 2:11, 2:23. Due to their personal connection, Petitioner's parents "begged [Ms. Jones] to help." Aff. Khatuna Jones at 2. Ms. Lowenfeld informed the Court that "personal turmoil" at home may have made Ms. Jones more susceptible to this emotional appeal, and that Ms. Jones's personal challenges made Ms. Lowenfeld reluctant to let her go prior to this incident. Hr'g at 2:25–26. Moreover, Ms. Lowenfeld believes that Ms. Jones aspired to play the heroine by aiding

immigration detainees like Petitioner, but because Ms. Jones is not an attorney, she is unaware of the immense responsibility that legal representation entails.  Hr'g at 2:29.

Ms. Lowenfeld was effectively out of the office from the end of September until October 16, 2025, first to respond to a family emergency abroad, and then to observe Jewish holy days during that time.  Dkt. No. 32 at 2; Hr'g at 2:11.  While Ms. Lowenfeld was away, Ms. Jones drafted the petition in this case and filed it with the Court "completely without [Ms. Lowenfeld's] knowledge or permission."  Dkt. No. 32 at 2; Hr'g at 2:10.  The petition was meant to be pro se, but Ms. Jones included Ms. Lowenfeld's signature; Ms. Jones represented that this was a drafting error, but Ms. Lowenfeld expressed suspicions that Ms. Jones thought that an attorney's signature would add legitimacy to the petition.  Hr'g at 2:12; Aff. Khatuna Jones at 2; Dkt. No. 32 at 2.  As noted several times on the record, Ms. Jones misspelled Ms. Lowenfeld's last name on the petition.  Dkt. No. 4 at 1 n.2; Dkt. No. 32 at 2; Hr'g at 2:12.  At the show cause hearing, Ms. Lowenfeld thanked the Court profusely for providing notice of Ms. Jones's misconduct, allowing her the opportunity to remedy the situation and mitigate any additional damage.  Hr'g at 2:16.

Ms. Jones was an experienced paralegal who had worked for Ms. Lowenfeld's office for "several years."  Hr'g at 2:20.[1]  Ms. Lowenfeld indicated that Ms. Jones was very professional prior to this incident, and that she was extremely qualified—Ms. Jones earned a college degree from Villanova University and had taken several paralegal courses.  Hr'g at 2:21, 2:47–48.  Ms. Jones does not have any formal paralegal certifications, and no formal certifications are required to work as a paralegal in New York.  Dkt. No. 45.  The Court remains consternated that Ms. Jones did not understand the gravity of her misconduct in this case.  *See* Hr'g at 2:19, 2:28–29, 2:42.

---

[1] In her subsequent advisory to the Court, Ms. Lowenfeld clarified that Ms. Jones "was called a paralegal but in fact worked as a legal assistant entrusted with intake and clerical work, but not with any advocacy, under [Ms. Lowenfeld's] supervision according to Rule 5.3.  However, she was not and is not a licensed paralegal; she merely was one of [Ms. Lowenfeld's] assistants."  Dkt. No. 45 at 3.

However, both Ms. Jones and Ms. Lowenfeld repeatedly stated that Ms. Jones thought that the petition had been rejected and never reached the Court.  *See, e.g.*, Hr'g at 2:21; Aff. Khatuna Jones at 2.  Even so, Ms. Jones's continued deceit of Ms. Lowenfeld regarding the existence of this case would certainly make her a "liability to any lawyer."  Hr'g at 2:40.

In fact, Ms. Lowenfeld informed the Court that she was unable to comply with the Court's orders in this case because Ms. Jones continued to keep her in the dark and prevent the Court's orders from reaching Ms. Lowenfeld.  Hr'g at 2:12.  Because Ms. Jones thought that the petition had been rejected, she was ashamed of her error in filing it, so she continued to hide the case from Ms. Lowenfeld.  Hr'g at 2:12, 2:22; Aff. Khatuna Jones at 2.  Ms. Jones even answered an email from Judge Garcia Marmolejo's law clerk regarding this case using the staff account for Ms. Lowenfeld's practice, unbeknownst to Ms. Lowenfeld.  Dkt. No. 32 at 3; Hr'g at 2:11.  Ms. Jones subsequently deleted the email from the Court.  Hr'g at 2:12.  Moreover, Ms. Lowenfeld was not checking her PACER account because she did not believe that she had any cases pending in federal court.  Dkt. No. 32 at 3; Hr'g at 2:13, 2:17.  Ms. Lowenfeld did not discover the existence of this case until she received a subsequent court order in the mail dated November 18, 2025.  Dkt. No. 32 at 3; Hr'g at 2:12; *see* Dkt. No. 26.  Shortly thereafter, she launched an internal investigation at her office and sent the Court a formal declaration explaining the situation.  Hr'g at 2:22, 2:46–47; Dkt. No. 32.  Moreover, in response to this incident, Ms. Lowenfeld fired Ms. Jones and took several steps to strengthen security at her practice.  Dkt. No. 32 at 3; Hr'g at 2:13.

When prompted, Ms. Lowenfeld detailed the remedial actions that she has taken to strengthen security at her law firm in New York: (1) Ms. Lowenfeld removed all non-lawyer access to court communications, and now all communications with the court must be approved by Ms. Lowenfeld herself.  Hr'g at 2:43. (2) With the assistance of her information and technology ("IT")

specialist, Ms. Lowenfeld enabled two-step authentication for all attorney systems and credentials. Hr'g at 2:33, 2:44; *see also* Decl. Benjamin Kravets (detailing the steps taken by IT to tighten security after Ms. Jones's indiscretion). (3) For now, Ms. Lowenfeld has implemented a double review system ensuring that she personally signs off on any outgoing mail, and she removed her electronic signature from her assistants' access. Hr'g at 2:33, 2:44–45. (4) Ms. Lowenfeld held three mandatory training courses for the remaining paralegals at her firm regarding the unauthorized practice of law and the ethical limits of their responsibilities. (5) Finally, upon learning of Ms. Jones's behavior, Ms. Lowenfeld changed all passwords and removed Ms. Jones's access to all accounts associated with her practice. Hr'g at 2:14, 2:45; Decl. Benjamin Kravets.

## II. Discussion

Lawyers who practice before this Court consent to disciplinary jurisdiction upon the Court. S.D. Tex. L.R. App'x A, 1.A; *In re Zuniga*, 332 B.R. 760, 772 (S.D. Tex. 2005) ("The Local Rules of the United States District Court for the Southern District of Texas . . . incorporate the disciplinary rules of the State of Texas; these disciplinary rules govern the ethical standards of the members of the bar."). While violations of the Texas Disciplinary Rules of Professional Conduct are grounds for disciplinary action, the Court is not limited by that code. *Id.* at 1.B. Rather, the Texas Disciplinary Rules of Professional Conduct provide "the minimum standard of practice in this Court." *Id.* at 1.A. The Texas Disciplinary Rules read, in pertinent part:

> With respect to a nonlawyer employed or retained by or associated with a lawyer:
> (a) a lawyer having direct supervisory authority over the nonlawyer shall make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer; and (b) a lawyer shall be subject to discipline for the conduct of such a person that would be a violation of these rules if engaged in by a lawyer if . . . the lawyer: (i) is a partner in the law firm in which the person is employed . . . and (ii) with knowledge of such misconduct by the nonlawyer knowingly fails to take reasonable remedial action to avoid or mitigate the consequences of that person's misconduct.

6

Tex. Disciplinary R. 5.03. "Necessary sanctions may be imposed not only directly, but through the bar of which the pro hac vice lawyer is a member . . . ." *Sanders v. Russell*, 401 F.2d 241, 246 (5th Cir. 1968). The Rules of Professional Conduct in New York, where Ms. Lowenfeld is licensed, include an additional provision in which a supervisory lawyer is responsible for a nonlawyer employee's conduct if "in the exercise of reasonable management or supervisory authority [they] should have known of the conduct so that reasonable remedial action could have been taken at a time when the consequences of the conduct could have been avoided or mitigated." N.Y. R. Pro. Conduct 5.3(b).

Thus, "[i]t is well-settled that a federal court, acting under its inherent authority, may impose sanctions against litigants or lawyers appearing before the court so long as the court makes a specific finding that they engaged in bad faith conduct." *In re Yorkshire, L.L.C.*, 540 F.3d 328, 332 (5th Cir. 2008); *see also Crowe v. Smith*, 151 F.3d 217, 221 (5th Cir. 1998) ("[A] finding of bad faith is a prerequisite to the exercise of a court's inherent power . . . ."); *Chaves v. M/V Medina Star*, 47 F.3d 153, 156 (5th Cir. 1995) (citing *Resolution Trust Corp. v. Bright*, 6 F.3d 336, 340 (5th Cir. 1993)) ("In order to impose sanctions against an attorney under its inherent power, a court must make a specific finding that the attorney acted in 'bad faith.'"). To sanction a party or attorney pursuant to its inherent power, the court must find that there was "bad faith or willful abuse of the judicial process by clear and convincing proof." *Vikas WSP, Ltd. V. Econ. Mud Prods. Co.*, 23 F.4th 442, 455 (5th Cir. 2022) (quoting *In re Moore*, 739 F.3d 724, 729–30 (5th Cir. 2014) (cleaned up)).

"[T]he Supreme Court has cautioned that '[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion.'" *Chaves*, 47 F.3d at 156 (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991)). Although "[t]he imposition of sanctions under the inherent

power is a decision particularly committed to the sound discretion of the district court," this significant power wielded by the district court must be "exercised in the most careful manner." *Crowe*, 151 F.3d at 240, 236.  In fact, the Fifth Circuit has emphasized that the court's inherent power "is not a broad reservoir of power, ready at an imperial hand, but a limited source; an implied power squeezed from the need to make the court function." *NASCO, Inc. v. Calcasieu Television & Radio, Inc.*, 894 F.2d 696, 702 (5th Cir. 1990).  "In short, the inherent power springs from the well of necessity, and sparingly so." *Nat. Gas Pipeline Co. of Am. V. Energy Gathering, Inc.*, 2 F.3d 1397, 1407 (5th Cir. 1993).

The undersigned finds that Ms. Lowenfeld did not violate the Texas Disciplinary Rules of Professional Conduct because she did not have knowledge of Ms. Jones's misconduct, nor did Ms. Lowenfeld "knowingly fail[] to take reasonable remedial action to avoid or mitigate the consequences of that person's misconduct." Tex. Disciplinary R. 5.03(a)(2)(ii).  In fact, the record shows that Ms. Lowenfeld took extensive remedial measures following her discovery of the wrongdoing in this case.  Ms. Lowenfeld tightened security around her communications with the courts by removing nonlawyer access to court communications, enabling two-step identification for all attorney credentials, and implementing a double-review sign-off process for all outgoing mail.  Hr'g at 2:43–44.  She also provided additional training sessions for the remaining paralegals regarding their ethical responsibilities.  Hr'g at 2:44.  *See* Tex. Disciplinary R. 5.03, Comment 1 ("A lawyer should give such assistants appropriate instruction and supervision concerning the ethical aspects of their employment.").  Finally, she terminated Ms. Jones's employment with her firm and removed her access to all accounts, changing the passwords.  Hr'g at 2:45.

Even under the stricter New York Rules of Professional Conduct, courts do not typically find that an attorney was negligent in their supervision of nonlawyer employees unless sanctions

were necessary to deter future negligent conduct, or the attorney failed to discover the wrongdoing given ample time and opportunity to do so. *See, e.g.*, *In re Sobolevsky*, 430 F. App'x 9, 9 (2d Cir. 2011) (sanctioning an immigration attorney where he "had engaged in a pattern of willful neglect of his responsibilities to his clients and the Court, and that there was a strong possibility that his misconduct would continue in the absence of discipline"); *In re Fuster*, 183 N.Y.S.3d 162 (N.Y. App. Div. 2023) (suspending an attorney where he learned that an employee had signed an unauthorized check from the escrow account and the attorney failed to investigate further, allowing employees to transfer approximately $467,079 in client funds from the escrow account to their personal accounts over the next year); *In re Hausman*, 101 N.Y.S.3d 455, 460 (N.Y. App. Div. 2019) (suspending an attorney for his "failure to detect . . . early warning signs" of misconduct by a nonlawyer employee).

Here, Ms. Lowenfeld did not exhibit such willful neglect of the work of nonlawyers at her practice. For example, she stated that all employees are required to sign confidentiality agreements that include language on ethics. Hr'g at 2:49–50. While the Court admonished Ms. Lowenfeld that she should exercise great discretion when hiring employees, whom she endows with a high degree of trust, Ms. Lowenfeld's response to Ms. Jones's wrongdoing in this case satisfies the Court that Ms. Lowenfeld understands her obligations as a supervising attorney and does not require further deterrence to ensure that such misconduct does not reoccur on her watch. Hr'g at 2:41, 2:51–52. At most, her actions constituted excusable neglect.

Moreover, Ms. Lowenfeld discovered the unauthorized filing of this case little over one month after it had occurred. Dkt. No. 32 at 2. Ms. Lowenfeld took immediate steps to mitigate the damage incurred by Ms. Jones's indiscretion. Hr'g at 2:43–45; *cf. Hausman*, 101 N.Y.S.3d at 460 (finding mitigating "the remedial actions taken to institute proper bank and bookkeeping

9

practices to avoid a reoccurrence"). Ms. Lowenfeld also initiated a forensic investigation into Ms. Jones's work, which did not uncover additional evidence of wrongdoing, leading investigators to conclude that this was an isolated incident. Hr'g at 2:46–47. Accordingly, the undersigned finds that Ms. Lowenfeld complied sufficiently with the applicable rules of professional conduct to render deterrent sanctions unnecessary.

Furthermore, the undersigned does not find that Ms. Lowenfeld acted in bad faith in this case. The distinction between bad faith and mere carelessness or mistake may be a fine line. *Roe v. Patterson*, 660 F. Supp. 3d 572, 580 (E.D. Tex. 2023). "Critical to this inquiry is whether the conduct at issue demonstrates a litigant's intentional and knowing effort to disrupt, delay, or similarly compromise the course of litigation." *Id.* Because Ms. Lowenfeld was unaware that this case had been filed and did not discover Ms. Jones's misconduct until after Ms. Jones had intercepted multiple court orders, the undersigned finds that she made no such "intentional and knowing effort" to interfere with the course of litigation in this case. Therefore, Ms. Lowenfeld did not act in bad faith, and she is not subject to sanctions under the Court's inherent powers. *See Yorkshire*, 540 F.3d at 332 ("[A] federal court, acting under its inherent authority, may impose sanctions against litigants or lawyers appearing before the court so long as the court makes a specific finding that they engaged in bad faith conduct."); *Crowe*, 151 F.3d at 221 ("[A] finding of bad faith is a prerequisite to the exercise of a court's inherent power . . . ."); *Chaves*, 47 F.3d at 156 (citing *Resolution Trust Corp. v. Bright*, 6 F.3d 336, 340 (5th Cir. 1993)) ("In order to impose sanctions against an attorney under its inherent power, a court must make a specific finding that the attorney acted in 'bad faith.'").

It is vital that attorneys exercise diligent discretion when hiring trusted staff members. Moreover, "[t]he measures employed in supervising nonlawyers should take account of the fact

that they do not have legal training and are not subject to professional discipline." N.Y. R. Pro. Conduct 5.3(b), Comment [2]; Tex. Disciplinary R. 5.03, Comment 1. Because only attorneys are answerable to the bar, the consequences of the nonlawyer employee's conduct fall squarely on the shoulders of the attorney herself. This is why it is crucial that attorneys hire and train their staff with the utmost care. Ultimately, however, the body of case law leads the Court to conclude that trusting the wrong person alone does not amount to bad faith. For this reason, Ms. Lowenfeld should be cautioned but not sanctioned.

### III. Conclusion

For the foregoing reasons, the undersigned **FINDS** that Ms. Lowenfeld has shown sufficient cause for her untimely filings, did not violate the applicable rules of professional conduct, and did not exhibit bad faith in her inability to comply with court orders, due to her unawareness of said orders. Thus, this Court respectfully **RECOMMENDS** that Ms. Lowenfeld not be sanctioned for her noncompliance with the District Court's orders in this case.

### Warnings

The parties may file objections to this Report and Recommendation, unless they waive the right to do so. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir. 1982) (en banc)).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after being served with a copy of the Report— or the party's waiver of the right to do so—shall bar that party from *de novo* review by the District

11

Court of the proposed findings and recommendations and, except upon grounds of plain error, shall bar the party from appellate review of proposed factual findings and legal conclusions accepted by the District Court to which no objections were filed. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn,* 474 U.S. 140, 150–53 (1985); *Douglass v. United Services Auto. Ass'n,* 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

Signed this February 24, 2026, in Laredo, Texas.

Diana Song Quiroga
United States Magistrate Judge